UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDI AUSTIN and CENTER FOR
COMMUNITY JUSTICE & ADVOCACY,
a Michigan non-profit corporation,

     Plaintiffs,           Case No.

v.                      Hon.

CITIMORTGAGE, INC., a New York
corporation,

     Defendant.
_____/

STEVE TOMKOWIAK
Counsel for Plaintiffs
29777 Telegraph Road, Suite 2500
Southfield, Michigan 48034
(248) 543-1600
Fax: (248) 543-1800
Email: stomk@sbcglobal.net
_____/

## COMPLAINT

   Plaintiffs Brandi Austin and Center for Community Justice and Advocacy, by their attorney, Steve Tomkowiak, and for their Complaint against Defendant CitiMortgage, Inc., state as follows:

### GENERAL ALLEGATIONS

**Non-Discrimination Requirements**
**of the HAMP Program**

   1.   The Home Affordable Modification Program (HAMP) repeatedly reminds lenders and loan servicers, such as Defendant CitiMortgage, Inc., that implementation of loan

modification programs must take place free of any discrimination against borrowers based on protective class basis:

> **Compliance with Applicable Laws**
>
> Each servicer (and any subservicer it uses) must be aware of, and in full compliance with, all federal, state, and local laws (including statutes, regulations, ordinances, administrative rules and orders that have the effect of law, and judicial rulings and opinions) – including, but not limited to, the following laws that apply to any of its practices related to the HAMP:
>
> . . .
>
> - Servicers' modifications under this program must comply with the Equal Credit Opportunity Act and the Fair Housing Act, which prohibit discrimination on a prohibited basis in connection with mortgage transactions. *Loan modification programs are subject to the fair lending laws, and servicers and lenders should ensure that they do not treat a borrower less favorably than other borrowers on grounds such as race*, religion, national origin, sex, marital or familial status, age, handicap, or receipt of public assistance income *in connection with any loan modification. These laws also prohibit redlining*.

FEDERAL RESERVE SUPPLEMENTAL DIRECTIVE 09-01, at 12 (April 6, 2009)(emphasis added); *see also* HOME AFFORDABLE MODIFICATION PROGRAM GUIDELINES, at 9 (March 4, 2009).

2.      CitiMortgage, Inc. has entered into an agreement with the Federal National Mortgage Association (FHMA or, more commonly "FannieMae"), entitled a "Commitment to Purchase Financial Instrument and Servicer Participation Agreement".[1]  In the Servicer Participation Agreement (SPA), CitiMortgage, Inc., on information and belief, warranted that it could comply with the anti-discrimination principles of all applicable laws, including the anti-discrimination provisions of the Fair Housing Act, the Equal Credit Opportunity Act and state anti-discrimination statutes:

> Servicer is in compliance with, and covenants that all Services will be performed in compliance with, all applicable Federal, state and local laws, regulations,

---

[1]*See* HAMP Servicer List (available at http://makinghomeaffordable.gov/contact_servicer .html).

regulatory guidance, statutes, ordinances, codes and requirements, including, but not limited to, . . . the Equal Credit Opportunity Act, 15 USC § 701 et seq., . . . Fair Housing Act and other Federal and state laws designed to prevent unfair, discriminatory or predatory lending practices and all applicable laws governing tenant rights.

3.       CitiMortgage, Inc., on information and belief, has also entered into a Subsequent Certification with FannieMae.  This required CitiMortgage, on information and belief, to represent that it implemented internal controls to assure compliance with the fair lending laws:

**Scope of the Internal Controls Program.**

. . . [S]ervicers are required to certify that they have developed and implemented an internal controls program to monitor and detect loan modification fraud and to monitor compliance with applicable consumer protection and fair lending laws, among other things, as described in the SPA.[2]

. . .

2. Servicer has developed and implemented an internal control program reasonably designed to monitor and detect loan modification fraud and to monitor compliance with applicable consumer protection and fair lending laws, among other things, as provided in Section 4 of the Financial Instrument.[3]

4.       The Treasury Department provided CitiMortgage and other lenders with several examples of control objectives:

**II.       Solicitation of Borrowers**

. . .

- Borrowers claiming a hardship who are current or are less than 60 days delinquent and who contact the servicer about a HAMP modification are screened for eligibility.

---

[2]*See* FEDERAL RESERVE SUPPLEMENTAL DIRECTIVE 10-06 (June 29, 2010)(available at https://www.hmpadmin.com/portal/docs/hamp_servicer/sd1006.pdf)(accessed Aug. 11, 2010).

[3]*Id.* at B-3, Exhibit B, Form of Subsequent Certification.

III.    **Investor and Third Party Analysis and Outreach**

. . .

- Servicers have a documented process to ensure that borrower-contact staff has accurate information about investor participation.

. . .

. . .

V.    **Appropriately Forestalling Foreclosure Initiations/Sales and Offering Alternative Foreclosure Prevention Programs**

- Servicers suspend foreclosure for HAMP eligible borrowers in a timely fashion until HAMP evaluation is completed.

. . . . [4]

5.      This case arises because of CitiMortgage, Inc.'s discrimination on grounds of race or color in its implementation of the HAMP program.

**_The Parties_**

6.      Plaintiff Brandi Austin (Austin) is a natural person and resident of the City of Detroit, County of Wayne, and State of Michigan.

7.      Plaintiff Center for Community Justice and Advocacy (CCJA) is a Michigan non-profit corporation with its principal place of business located in the City of Detroit, County of Wayne, and State of Michigan.

8.      On information and belief, Defendant CitiMortgage, Inc. (CitiMortgage), is a New York corporation, with its principal office at 1000 Technology Drive, Mail Station 20-1-371, O'Fallon, MO 63368.

9.      On information and belief, CitiMortgage's Michigan office for service of process is located at 30600 Telegraph Road, in the City of Bingham Farms, County of Oakland, State of Michigan.

---

[4]*Id.* at C-1, Exhibit C, Examples of Control Objectives.

10.     On information and belief, CitiMortgage is a subsidiary of Citigroup, Inc., a Delaware corporation with its principal executive offices in New York, N.Y.

11.     CitiMortgage states in its 2010 Foreign Corporation Information Update, filed with the State of Michigan, that it is engaged in mortgage banking activities in Michigan, including mortgage servicing and various types of lending.

### *Jurisdiction and Venue*

12.     This cause of action arises under the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.* (FHA), which prohibits any person or entity engaged in residential real estate-related transactions from discriminating against any person or redlining in residential lending practices because of race or color.

13.     This cause of action also arises under Civil Rights Acts of 1866 & 1870, 42 U.S.C. §§ 1981 & 1982 (Sections 1981 & 1982), including Section 1981(b), which prohibit discrimination and redlining on the basis of race or color with respect to the formation of contracts or agreements relating to the financing of housing and mortgage lending.

14.     This cause of action also arises under the Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq. (CCPA).  Title VII of the CCPA, more commonly referred to as the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq*. ("ECOA"), prohibits discrimination and redlining in credit transactions on grounds of the race or color of a credit applicant.

15.     This cause of action also arises under the fair housing and financing provisions of the Michigan Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2501 et seq. (ELCRA), which, like Sections 1981 & 1982, prohibits any and all forms of discrimination and redlining on grounds of race or color in connection with housing related financing.

16.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 3613 and 15 U.S.C. § 1691e.  The Court also has supplemental jurisdiction over Plaintiffs' state law ELCRA claims.

17.      Plaintiffs' claims are timely, as filed within the two-year limitations period applicable under the FHA, the three-year statute of limitations period applicable to claims under Sections 1981 & 1982 and the ELCRA, and four-year limitations period applicable to claims under Section 1981(b).

18.      Venue is appropriate, under 28 U.S.C. § 1391, since the substantial part of the events giving rise to this action occurred in this District; CitiMortgage conducts business in this District; Austin and the CCJA reside and have their principal place of business in this District; and the property that is the subject of this action are located in this District.

### *CCJA's Mission and Purpose*

19.      CCJA's mission and purpose is to undertake activities to help educate and support human, civil and constitutional rights of low- to moderate-income residents of Southeastern Michigan.

20.      CCJA's activities, include, among other things, assisting and counseling residents in foreclosure prevention and mitigation.  CCJA assists borrowers by assessing their qualifications to obtain loan modifications.

21.      CCJA is a HUD-approved housing counseling agency.  CCJA activities also include detecting instances of lending discrimination and predatory lending.

22.      CCJA's purpose also includes advocating for all such persons aggrieved by a violation of human, civil or constitutional rights.  As a HUD-approved counseling agency, CCJA

is expected to help remedy discrimination in housing and promote fair housing rights and fair housing choice.

23.     All of CCJA's activities seeks to protect the civil and constitutional the rights of persons to fair lending without discrimination because of race, religion, color, national origin, age, sex, marital status, familial status or disability.

***Austin's Protected***
***Class Membership***

24.     Austin is Black or of African-American descent.

25.     Austin's race or color as "Black or African American" is set forth on various Uniform Residential Loan Applications (Form 1003) held by CitiMortgage.

26.     Austin's property was located in Detroit, Michigan.

27.     CitiMortgage at all relevant times was aware of the location of Austin's property.

28.     Austin's property was located in an area where the majority of residents are Black or of African-American descent.

***Austin's Purchase of a Condominium***
***Unit and Loan with CitiMortgage***

29.     On March 30, 2006, Austin purchased a residential condominium unit located at 6533 E. Jefferson, Detroit, MI 48207, a development more commonly known as the "Lofts at Rivertown".

30.     To finance her purchase of the condominium unit, Austin obtained a $117,300 mortgage from ABN Amro Mortgage Group (AAMG).

31.     On information and belief, in 2007 the assets of AAMG, including Austin's mortgage, merged with and into CitiMortgage.

32.     On information and belief, Austin's mortgage was owned by Federal Home Loan Mortgage Corporation (FHLMC), more commonly known as "Freddie Mac", with CitiMortgage serving as servicer and Radian as an insurer.

***Austin's Requests for a***
***Loan Modification***

33.     In January of 2009, Austin was informed of the termination of her employment.

34.     Beginning in January of 2009, Austin requested a loan modification by faxing three separate loan modification requests to CitiMortgage.

***CitiMortgage's Discriminatory Denial of***
***Austin's Loan Modification Requests***

35.     CitiMortgage responded by denying Austin's request because she was not delinquent on her mortgage.

36.     Under HAMP guidelines, CitiMortgage should have considered Austin's request for a loan modification under HAMP without requiring Austin to become delinquent on her mortgage.

37.     After Austin, in February of 2009, became delinquent, she again requested a loan modification.

38.     In April of 2009, Austin began receiving weekly bi-weekly unemployment benefits in the amount of $668.

39.     On April 15, 2009, almost two months later, CitiMortgage denied Austin's request allegedly due to "insufficient income".

40.     In June of 2009, Austin received notice from Trott & Trott, P.C., legal counsel for CitiMortgage, of the commencement of foreclosure proceedings.

8

41.     Under HAMP guidelines, CitiMortgage should have commenced foreclosure proceedings during the period that CitiMortgage was considering, or should have been considering, Austin's request for a loan modification under HAMP.

42.     In July of 2009, CitiMortgage claimed that it did not receive information from Austin regarding her loan modification request.

43.     Although Austin had fax confirmations that CitiMortgage received her loan modification requests and accompanying materials, Austin, in July of 2009, repeatedly resent her loan modification request and supporting materials to CitiMortgage.

44.     In a letter dated August 3, 2009, CitiMortgage notified Austin that it denied her for several loan modifications requests and that she could contact loss mitigation if she had any questions:

> After careful consideration, your request for a *Workable Solutions$^{SM}$* option has been respectfully declined due to the following reasons:
>
> When we reviewed your account for a Repayment Plan/Special Forbearance it was determined that there is not sufficient income to support this option.
>
> When we reviewed your account for a Modification, it was determined that there is not sufficient income to support this option. (emphasis in original)

45.     CitiMortgage's decision violated the HAMP guidelines in effect at that time, which repeatedly permitted unemployment benefits to constitute acceptable income for purposes of loan modifications under HAMP:

| | |
|---|---|
| **Monthly Gross Income:** | *The borrower's Monthly Gross Income* is the amount before any payroll deductions *includes* wages and salaries, overtime pay, commissions, fees, tips, bonuses, housing allowances, other compensation for personal services, Social Security payment, including Social Security received by adults on behalf of minors or by minors intended for their own support, annuities, insurance polices, retirement funds, pensions, disability or death benefits, *unemployment benefits*, rental |

| | income and other income. |
|---|---|
| | Monthly net income can be used for preliminary screening and qualification. If used, the servicer will need to multiply net income by 1.25 to get to an estimate of Monthly Gross Income. |

HOME AFFORDABLE MODIFICATION PROGRAM GUIDELINES, at  (March 4, 2009)(emphasis added).

*The borrower's "monthly gross income" is the borrower's income amount before any payroll deductions and includes* wages and salaries, overtime pay, commissions, fees, tips, bonuses, housing allowances, other compensation for personal services, Social Security payments, including Social Security received by adults on behalf of minors or by minors intended for their own support, and monthly income from annuities, insurance policies, retirement funds, pensions, disability or death benefits, *unemployment benefits*, rental income and other income.

. . .

If the borrower has other income such as social security, disability or death benefits, or a pension:

. . .

*If the borrower* receives public assistance or *collects unemployment*:

- *Acceptable documentation includes letters, exhibits or a benefits statement from the provider that states the amount, frequency, and duration of the benefit.* The servicer must determine that the income will continue for at least nine months.

FEDERAL RESERVE SUPPLEMENTAL DIRECTIVE 09-01, at 6 & 8 (April 6, 2009)(emphasis added).

**Borrower Income/Asset Documentation and Verification of Eligibility**

Servicers should request that the borrower provide the income verification documentation listed below but may, consistent with contractual requirements, substitute other reliable forms of verification when appropriate.

**Unemployment Benefits.** Evidence of the amount, frequency and duration of the benefits (usually obtained through a monetary determination letter). The unemployment income must continue for at least nine months from the date of the application. The duration of benefit eligibility – including federal and state extensions – may be evidenced by a screenshot or printout from the Department of Labor UI benefit tool, which is available at http://www.ows.doleta.gov/unemploy/ben_entitle.asp.

FEDERAL RESERVE SUPPLEMENTAL DIRECTIVE 10-01, at 4-5 (emphasis added).[5]

46.      CitiMortgage's rejection of Austin's unemployment as "insufficient income" also violated CitiMortage's own program or policy pertaining to unemployed borrowers:

> Citi Unemployment Assist Program – Since March 2009, this CitiMortgage program serves as a bridge to longer-term solutions for recently unemployed borrowers with CitiMortgage-owned mortgages. The program lowers monthly mortgage payments to an average of $500 for three months for most eligible borrowers, a cost below the national average rent for a one-bedroom residence, according to Citi Research.[6]

On August 5, 2009, CitiMortgage proceeded with the sheriff's sale on Austin's home, with the home purchased by Federal Home Loan Mortgage Corp. ("FHLMC" or "Freddie Mac") for $119,737.10.

47.      The sale occurred even though CitiMortgage had told Austin in July of 2009 that CitiMortgage would postpone proceeding with the sheriff's sale since Austin was eligible for the loan modification program.

48.      On December 30, 2009, Austin, in desperation, sent a hand-written letter pleading again for favorable consideration of her loan modification request.

---

[5]On or after July 1, 2010, servicers may no longer consider unemployment insurance benefits as a source of income when evaluating borrowers for HAMP.  FEDERAL RESERVE SUPPLEMENTAL DIRECTIVE 10-04, at 1 (May 11, 2010).   This Federal Reserve directive was not in effect, however, when CitiMortgage engaged in disparate treatment of Plaintiff Brandi Austin in comparison to non-protected class borrowers as set forth below.

[6]Citigroup, Inc. Press Release of June 16, 2010 (available at http://www.citigroup.com/citi/press/2010/100616b.htm))(accessed August 4, 2010).

***CCJA's Finding that Austin Qualified
for a Loan Modification Under HAMP***

49.     On January 5, 2010, Austin, lacking no other alternative, contacted the CCJA

regarding her experiences with CitiMortgage.

50.     CCJA reviewed Austin's unemployment income and other financial

information, completed a Debt Coverage and Cash Reserves Test spreadsheet (attached), and

found that Austin had met the qualifications for a loan modification under HAMP.

***CCJA's Request that CitiMortgage Reconsider Austin
for a Loan Modification Under HAMP***

51.     After finding that Austin qualified for a loan modification under HAMP, CCJA

contacted Trott & Trott, P.C. to obtain a loan modification on Austin's behalf.

52.     On January 12, 2010, CCJA sent Trott & Trott, P.C.'s loss mitigation

department financial records, hardship letter and unemployment insurance statement regarding

Austin.

53.     On January 14, 2010, CCJA sent Trott & Trott, P.C.'s loss mitigation

department bank statements of Austin.

54.     On January 25, 2010, CCJA submitted a letter on Austin's behalf to Trott &

Trott, P.C., legal counsel for CitiMortgage, disputing the foreclosure and requesting that Austin's

loan be reinstated and reviewed for a loan modification under HAMP.  As explained by CCJA in

its letter to Trott &Trott, P.C.

      A.  Austin's loan was a FreddieMac loan;

      B.  According to FreddieMac's guidelines, the loan must be reviewed for HAMP

          eligibility; and

      C.  According to CCJA's review, Austin's loan was eligible for modification under HAMP.

55.      CCJA's January 25, 2010 letter concluded by "disputing the foreclosure" and asking that the loan be reinstated with a loan modification imitated according to FreddieMac guidelines.

56.      CCJA also sent Trott & Trott, P.C. a completed Borrower Financial Information form.

57.      On February 1, 2010, CCJA contacted Trott & Trott, P.C., regarding the letter of January 25, 2010 and request for a loan modification under HAMP.

58.      A representative from Trott & Trott, P.C. informed CCJA that no assistance was available for Austin, and that Trott & Trott, P.C. had no contact numbers or fax numbers for CitiMortgage, FreddieMac and Radian.

***CCJA's Discovery of CitiMortgage's Discriminatory
Treatment of Loan Modification Applicants
<u>Similarly Situated to Austin</u>***

      ***(i)    J.E.***

59.      On or before January 7, 2010, at the same time CCJA and Austin unsuccessfully sought to obtain a loan modification from CitiMortgage under HAMP, CCJA was contacted by a J.E., a White male, residing outside the City of Detroit, seeking a loan modification from CitiMortgage.

60.      J.E.'s race or color as "White" was set forth on a completed MSHDA Housing Profile form provided to CitiMortgage, and, on information and belief, on various Uniform Residential Loan Applications (Form 1003) held by CitiMortgage and on a HAMP Hardship Affidavit form (Fannie Mae Form 1021) provided to CitiMortgage.

61.     J.E.'s property is located in Fife Lake, Michigan.

62.     CitiMortgage at all relevant times was aware of the location of J.S.'s property.

63.     J.E.'s property was not located in an area of where the majority of residents are Black or of African-American descent.

64.     Like Austin, J.E.'s sole source of income was unemployment benefits.

65.     Like Austin, J.E. had previously requested a loan modification from CitiMortgage.

66.     Unlike Austin, CitiMortgage, upon receipt of J.E.'s loan modification request, did not proceed with the foreclosure sale.

67.     Indeed, CitiMortgage did not proceed with a foreclosure sale though J.E., according to a letter from CitiMortgage dated December 24, 2009, was five months behind in his mortgage payments.

68.     Thereafter, CitiMortgage proceeded to grant J.E. a loan modification under HAMP, permitting J.E. to remain in his home.

*(ii)*     ***C.G. & K.G.***

69.     In June of 2009, CCJA was contacted and began working with C.G. & K.G. in regards to obtaining a loan modification from CitiMortgage.

70.     C.G. & K.G.'s race or color as "White" was set forth on various Uniform Residential Loan Applications (Form 1003) held by CitiMortgage and on the HAMP Hardship Affidavit (Fannie Mae Form 1021) provided to CitiMortgage.

71.     C.G. & K.G.'s property is located in New Boston, Michigan.

72.     CitiMortgage at all relevant times was aware of the location of C.G. & K.G.'s property.

73.     C.G. & K.G.'s property was not located in an area of where the majority of residents are Black or of African-American descent.

74.     Like Austin, C.G. and & K.G. sought a loan modification from CitiMortgage.

75.     Like Austin, C.G.'s sole source of income was unemployment benefits.

76.     On or before June of 2009, C.G. and & K.G. requested a loan modification from CitiMortgage under CitiMortgage's Workable SolutionsSM option.

77.     Unlike Austin, C.G. and & K.G. were not denied CitiMortgage's Workable SolutionsSM option.

78.     Rather, in July of 2009, CitiMortgage granted C.G. & K.G. a forbearance agreement.

79.     In September of 2009, CitiMortgage granted C.G. & K.G. approval under a HAMP trial plan.

80.     On February 17, 2010, C.G. & K.G. were approved for eligibility for a loan modification under HAMP, enabling C.G. & K.G. to remain in their home.

### ***Damages to Austin***

81.     As a direct and proximate result of the CitiMortgage's differential treatment and discrimination against Austin on grounds of her race or color, or the race or color of residents in her community, Austin has incurred economic losses and damages, including the loss of her home, as well as non-economic injuries, such as embarrassment, humiliation, anxiety, frustration, loss of personhood and civil rights, and other personal injuries caused by the discriminatory actions of CitiMortgage.

82.     Further, the acts, conduct and/or omissions of CitiMortgage with respect to Austin was and continues to be intentional, malicious, and in wanton or reckless disregard of the

rights and feelings of Austin, entitling Austin to an additional award of punitive and/or exemplary damages.

***Damages to CCJA***

83.     The discriminatory acts and unfair housing practices engaged in by CitiMortgage has directly obstructed, frustrated and damaged the CCJA's mission to assist and counsel borrowers in foreclosure prevention and mitigation, and residents in all communities served by CCJA, without regard to race or color.

84.     The commitment of the CCJA to provide foreclosure prevention and mitigation fosters its ultimate goal of abolishing its own existence.   Thus, the ongoing intentional discriminatory practices of CitiMortgage not only prolong the CCJA's existence, but has also diverted scarce resources from other CCJA activities in order to counteract CitiMortgage's unlawful actions.

***COUNT I***
***VIOLATION OF THE FHA***

85.     Paragraphs 1 through 84 of the Complaint are incorporated and restated as if set forth fully herein.

86.     CitiMortgage's discriminatory actions on grounds of race or color denied Plaintiffs the rights to which they entitled to contract for and otherwise obtain financing or refinancing in housing-related transactions, in violation of the FHA, 42 U.S.C. § 3605.

87.     CitiMortgage's discrimination in violation of the FHA has caused injuries and damages to Plaintiffs.

## COUNT II
## VIOLATION OF SECTIONS 1981 & 1982

88.     Paragraphs 1 through 87 of the Complaint are incorporated and restated as if set forth fully herein.

89.     CitiMortgage's discriminatory actions on grounds of race or color denied Plaintiffs the rights to which they entitled to contract for and otherwise obtain financing or refinancing in housing-related transactions, in violation of 42 U.S.C. §§ 1981 & 1982, including 42 U.S.C. § 1981(b).

90.     CitiMortgage's discrimination in violation of Sections 1981 & 1982, including 42 U.S.C. § 1981(b), has caused injuries and damages to Plaintiffs.

## COUNT III
## VIOLATION OF THE ECOA

91.     Paragraphs 1 through 84 of the Complaint are incorporated and restated as if set forth fully herein.

92.     CitiMortgage discriminated against Austin, on information and belief, other mortgage holders, on grounds of race or color in violation of the ECOA, resulting in economic and non-economic injuries and damages to Plaintiffs.

## COUNT IV
## VIOLATION OF THE ELCRA

93.     Paragraphs 1 through 90 of the Complaint are incorporated and restated as if set forth fully herein.

94.     CitiMortgage discriminated against Plaintiffs on grounds of race or color in violation of the ELCRA, which prohibits any person or entity engaged in residential real estate-related transactions from discriminating against any person in making available such a

transaction, or determining the terms or conditions of such a transaction, because of race or color.

95.     CitiMortgage's discrimination in violation of the ELCRA has caused injuries and damages to Plaintiffs.

WHEREFORE, for all of the above reasons, Plaintiffs respectfully requests that the Court grant the following relief against CitiMortgage:

(A)     Enter a declaratory judgment that the actions of CitiMortgage are discriminatory and illegal;

(B)     Preliminarily and permanently enjoin CitiMortgage and its agents, affiliates, employees and successors, and all other persons in active concert or participation with CitiMortgage, from further discrimination in any aspect of residential real estate-related transactions and, further, that the Court grant a preliminary injunction until such time as CitiMortgage provides loan modifications on a non-discriminatory basis;

(C)     Grant affirmative relief as may be necessary to remedy CitiMortgage's past discriminatory practices and decisions and to insure that CitiMortgage does not discriminate on grounds of race or color in the future;

(D)     Award actual, compensatory and/or statutory damages to compensate Plaintifs for their economic losses and damages, and non-economic injuries, such as emotional distress, loss of civil rights, and humiliation and embarrassment caused by the CitiMortgage's discrimination, in an amount to be proven at trial;

(E)     Grant Plaintiffs an award of punitive and/or exemplary damages as a result of CitiMortgage's deliberate, intentional, overt, willful and flagrant discrimination on grounds of race or color, in an amount that reflects the dual purposes of punishment and deterrence;

(F)     Grant Plaintiffs an award of attorney fees, costs and pre-judgment and post-judgment interest incurred in bringing this action; and

(G)     Grant such other and additional relief that the Court finds just and appropriate under the circumstances.

Respectfully submitted,

LAW OFFICE OF STEVE TOMKOWIAK
Counsel for Plaintiffs

By: */s/ Steve Tomkowiak* (P-40042)
29777 Telegraph Road, Suite 2500
Southfield, Michigan 48034
(248) 543-1600
Fax: (248) 543-1800
Email: stomk@sbcglobal.net

Dated:  August 11, 2010

## Debt Coverage Ratio and Cash Reserves Test

**Brandy Austin**
216301741
Tuesday, January 05, 2010

#LOAN
DATE

| Debt Coverage Ratio (DCR) | HAMP Target Payment at 31% | | | FHA/Michigan Target Payment @ 38% | | |
|---|---|---|---|---|---|---|
| Gross Monthly Income | $ 1,336.00 | 31% | $ 414.16 | $ 1,336.00 | 38% | $ 507.68 |
| Fill In MONTHLY Deductions: | | | | | | |
| Payroll Deductions | $ - | | | $ - | | |
| Escrows (Taxes,Ins,HOA) | $ - | | | $ - | | |
| Installment & Revolving Monthly Accounts | $ 315.00 | | | $ 315.00 | | |
| Flexible Monthly Expenses | $ 315.00 | | | $ 315.00 | | |
| Other Obligations* | | | | | | |
| Misc.Items* | | | | | | |
| Total Expenses and Deductions | $ 630.00 | | | $ 630.00 | | |
| | | | | | | |
| Disposable Net Income = | $ 706.00 | | | $ 706.00 | | |
| | | | | | | |
| Current Monthly P&I Payment | $ 882.00 | | | $ 882.00 | | |
| Less Target Payment Surplus /(Shortage) | $ (467.84) | | | $ (467.84) | | |
| | | | | | | |
| Debt Coverage Ratio (DCR) | 0.80 | | | 0.58 | | |
| If DCR exceeds 1.20, then fails HAMP test | | | | | | |
| Mean Average HAMP Payment 31% & 38% | | | | | | $ 460.92 |

### Cash Reserves Test

| | | |
|---|---|---|
| Cash in Checking | $ | - |
| Cash in Savings | $ | - |
| Non-Retirement Investment Accounts (Liquid w/in 7 days) | $ | - |
| | | |
| **Total Cash Reserves** | $ | - |
| | | |
| | | |
| Current Monthly P&I Payment | $ | 882.00 |
| Monthly Taxes, Insurance and HOA | $ | - |
| **TOTAL-PITIAS** | $ | 882.00 |
| | | |
| | | |
| | | |
| Calculated PITI / Reserves for 3 Months | $ | 2,646.00 |
| Less Actual Total Cash Reserves | $ | - |
| | | |
| Surplus/ (Shortage ) | $ | (2,646.00) |
| If greater than > or equal to 3X monthly P&I: Fails HAMP | | |

* Unlocked cells to be changed.