UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDI AUSTIN, and CENTER
FOR COMMUNITY JUSTICE
AND ADVOCACY,

        Plaintiffs,

v.                                        Case No. 10-cv-13185
                                        Paul D. Borman
                                        United States District Judge

CITIMORTGAGE, INC.,

        Defendant.

_____/

**OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF CENTER FOR**
**COMMUNITY JUSTICE AND ADVOCACY FOR LACK OF STANDING (Dkt. No. 66)**

Plaintiffs Brandi Austin and Center for Community Justice & Advocacy ("CCJA") filed this case on August 11, 2010, alleging claims arising out of the Fair Housing Amendments Act of 1988 ("FHA"), 42 U.S.C. § 3601, *et seq.*; the Civil Rights Act of 1866 and 1870, 42 U.S.C. §§ 1981 and 1982; the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.*; and the Elliot-Larsen Civil Rights Act, M.C.L. § 37.2501, *et seq.* Plaintiffs allege that Defendant CitiMortgage, Inc., violated these laws by discriminating on the basis of race, as evidenced by its denial of Plaintiff Austin's request to refinance her home mortgage. (Compl., Dkt. No. 1.)

On March 30, 2012, Defendant filed a Motion to Dismiss Plaintiff CCJA for Lack of Standing, and for Judgment on the Pleadings. (Dkt. No. 66.) CCJA filed a Response on April 30, 2012. (Dkt. No. 73.) Defendant filed a Reply on May 21, 2012. (Dkt. No. 77.) The Court

1

held a hearing on August 1, 2012.

For the reasons stated below, the Court will GRANT Defendant's motion and DISMISS Plaintiff CCJA for lack of standing.

## I. BACKGROUND

On a motion to dismiss, the Court views the factual content in the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

CCJA is a nonprofit corporation located in Detroit, Michigan, that provides housing counseling and assistance to low- and moderate-income residents in Southeast Michigan. Specifically, CCJA assists individuals in foreclosure prevention "by assessing their qualifications to obtain loan modifications." (Compl. ¶ 20.) In addition, CCJA conducts activities aimed at detecting discriminatory and predatory practices in lending. CCJA alleges that it is an approved counseling agency by the United States Department of Housing and Urban Development ("HUD"), and is therefore "expected to help remedy discrimination in housing and promote fair housing rights and fair housing choice." (Compl. ¶ 22.)

### A. Plaintiff Austin

Plaintiff Austin is African American. On March 30, 2006, Plaintiff Austin purchased a condominium in a development in Detroit, known as the Lofts at Rivertown, financed by a $117,300 mortgage. Plaintiff Austin's condominium was located in a predominantly African-American neighborhood.

In January 2009, Plaintiff Austin lost her job and, subsequently, sought a modification of

2

her mortgage from Defendant.[1] Plaintiffs allege that Austin first began receiving unemployment benefits in April 2009. (Compl. ¶ 38.) On April 15, 2009, Plaintiff Austin's request for a modification was denied due to "insufficient income." (Compl. ¶ 39.)

In June 2009, counsel for Defendant, Trott & Trott, P.C., informed Plaintiff Austin that it had commenced foreclosure proceedings. On August 5, 2009, Defendant sold Plaintiff Austin's condominium to Freddie Mac at a sheriff's sale.

On January 5, 2010 – five months *after* the home had been sold at a foreclosure sale – Plaintiff Austin contacted Plaintiff CCJA. CCJA calculated Plaintiff Austin's unemployment income and determined that she qualified for a loan modification under the Home Affordable Modification Program ("HAMP"). On January 25, 2010, CCJA sent Trott & Trott, P.C., a letter disputing the August 5, 2009 foreclosure sale, and requesting that Plaintiff Austin's mortgage loan be reinstated and reviewed for a modification under HAMP. (Compl. ¶ 54.) CCJA then contacted Trott & Trott, P.C. on February 1, 2010, regarding Plaintiff Austin's mortgage. A representative from Trott & Trott, P.C. informed CCJA that there was no assistance available to Plaintiff Austin.

## B. Other Loan Modification Applicants

Plaintiffs allege that modification applicants who were receiving unemployment benefits but were white, and lived in areas that were not predominantly African-American neighborhoods, were given modifications.

---

[1] The mortgage was issued by ABN Amro Mortgage Group, which was purchased by Defendant in 2007. Plaintiff alleges that the mortgage is owned by the Federal Home Loan Mortgage Corporation, or Freddie Mac, but that Defendant is the servicer of the mortgage. (Compl. ¶ 32.)

Plaintiffs allege that a CCJA client with the initial J.E., a white male whose sole source of income was unemployment insurance, sought a modification of his mortgage from Defendant on or before January 7, 2010. J.E.'s property was located in Fife Lake, Michigan, in Grand Traverse County, approximately 25 miles outside of Traverse City and over 230 miles away from Detroit. Fife Lake, according to the Complaint, is not an area where the majority of residents are of African-American descent. After submitting his request for a modification, Defendant granted J.E. a modification under HAMP and did not proceed with a foreclosure sale of the property. Plaintiffs do not allege what J.E.'s monthly unemployment income was or how much J.E. owed on his mortgage. Thus, in J.E.'s case, CCJA was assisting a client prior to foreclosure.

In June 2009, CCJA assisted two white individuals whose initials were C.G. and K.G., and who contacted CCJA while seeking a loan modification from Defendant. C.G. and K.G. owned a home in New Boston, Michigan, which is approximately 30 miles outside of Detroit and, according to the Complaint, is not a predominantly African-American area. The Complaint fails to allege whether K.G. had any income, but it does state that C.G.'s sole source of income was unemployment insurance. (Compl. ¶ 75.) Plaintiffs allege that C.G. and K.G. were given a forbearance agreement after requesting a modification, and that their modification request was eventually granted. Plaintiffs do not allege how much C.G.'s monthly unemployment payments were, or how much C.G. and K.G. owed on their mortgage. Again, in the case of C.G. and K.G., CCJA was assisting a client prior to foreclosure.

The Court notes that Plaintiffs' Complaint sets forth a portion of Defendant's Subsequent Certification with Fannie Mae, that includes the following:

**V. Appropriately Forestalling Foreclosure Initiations/Sales**

**and Offering Alternative Foreclosure Prevention Programs**
- Servicers suspend foreclosure for HAMP eligible borrowers in a timely fashion until HAMP evaluation is completed.

(Compl. ¶ 4 (emphasis in original).) In the instant case, Plaintiff Austin did not contact Plaintiff CCJA until after the foreclosure. (Compl. ¶¶ 46, 49.) Thus, Plaintiff CCJA's activity in the instant case does not fit under the portion of Defendant's certification set forth in the Complaint. Plaintiffs do not allege that any of the other loan modification applicants cited in the Complaint were post-foreclosure.

In Plaintiff Austin's case, CCJA was faced with the task of invalidating a foreclosure sale that had already taken place. Plaintiffs have not alleged facts showing that clients J.E., C.G. and K.G., who fit within the HAMP certification, were in a similar situation with co-Plaintiff Austin.

## C. CCJA's Alleged Damages

CCJA alleges that Defendant's decision to deny Plaintiff Austin's modification request was based on Austin's race or ethnicity. As a result, CCJA alleges that Defendant "has directly obstructed, frustrated and damaged CCJA's mission to assist and counsel borrowers in foreclosure prevention and mitigation, and residents in all communities served by CCJA, without regard to race or color." (Compl. ¶ 83.) CCJA further alleges that "the ongoing intentional discriminatory practices of CitiMortgage . . . [have] also diverted scarce resources from other CCJA activities in order to counteract CitiMortgage's unlawful actions." (Compl. ¶ 84.)

## II. LEGAL STANDARD

Defendant argues that Plaintiff CCJA should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(c).

A Rule 12(b)(1) motion challenges the jurisdictional allegations in the complaint. The

5

motion may facially attack the allegations as insufficient to confer subject-matter jurisdiction, in which case the allegations are taken as true, or it may attack the factual predicates for subject-matter jurisdiction, in which case the Court may weigh the evidence. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012).

Under Rule 12(b)(6), the Court may dismiss an action for failure to state a claim upon which relief can be granted. To survive a 12(b)(6) motion, the complaint must contain sufficient factual matter, which the Court takes as true and construes in a light most favorable to the plaintiff, to state a plausible claim for relief. *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

Under Rule 12(c), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citation omitted). The motion is granted only if "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.*

### III. ANALYSIS

Defendant argues that Plaintiff CCJA lacks Article III standing and prudential standing to bring the claims alleged in the Complaint. An organization can have standing to sue under the FHA for racial "steering" practices. *See generally Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979). Article III standing requires the Plaintiff to show "some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent plaintiff's injury." *Coal Operators and Associates, Inc. v. Babbitt*, 291 F.3d

912, 916 (6th Cir. 2002). Even when the Article III standing requirements are met, a plaintiff must satisfy prudential standing, which considers whether "the plaintiff [is] a proper proponent, and the action a proper vehicle, to vindicate the rights asserted." *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009) (citation omitted).

Defendant argues that Plaintiff CCJA's alleged injuries are conclusory legal statements with no factual content behind them. Defendant asserts that CCJA must allege that it conducted an investigation or otherwise diverted some resources from its normal activities, other than initiate the instant litigation, to show an injury that can confer standing. Plaintiff CCJA claims that it need only allege that Defendant's racial discrimination frustrated CCJA's efforts to provide equal access to housing, and that it has had to devote significant efforts to identify and counteract Defendant's discriminatory practices.

Plaintiff CCJA relies on *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), which held that a nonprofit organization, Housing Opportunities Made Equal ("HOME"), had standing to sue under the FHA. In that case, the United States Supreme Court noted HOME's alleged injury as follows:

> Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services. Plaintiff HOME has had to devote significant resources to identify and counteract the defendant's [sic] racially discriminatory steering practices.

*Id.* at 379 (alteration in original).

The Court reasoned that HOME had alleged a "concrete and demonstrable injury to the organization's activities – with the consequent drain on the organization's resources" that showed "far more than simply a setback to the organization's abstract social interests . . . ." *Id.*

7

Plaintiff also relies on *Hooker v. Weathers*, 990 F.2d 913 (6th Cir. 1993), in which the Sixth Circuit cited *Havens Realty* in finding that an organization, the Fair Housing Contact Service ("FHCS"), had standing to sue for alleged discriminatory housing practices. In holding that FHCS had standing, the Sixth Circuit noted that FHCS alleged that it "'conducted an investigation, and confirmed the facts and circumstances alleged [in the complaint].'" *Id.* at 915 (alteration in original, citation omitted). The Sixth Circuit concluded that FHCS had "devoted resources to investigating the defendants' practices and alleges that it has confirmed that defendants do discriminate on the basis of familial status. Therefore, FHCS has standing." *Id.*

Both of the above cases are distinguishable from the instant case. In the instant Complaint, Plaintiff CCJA alleges that Defendant has "frustrated and damaged the CCJA's mission to assist and counsel borrowers in foreclosure prevention and mitigation," and that CCJA "has also diverted scarce resources from other CCJA activities in order to counteract CitiMortgage's unlawful actions." (Compl. ¶¶ 83-84.) However, CCJA has not alleged any specific facts to support these instant allegations, other than filing the instant lawsuit. Unlike the plaintiff in *Hooker*, Plaintiff CCJA has not alleged facts showing that it devoted any resources to investigate Defendant and confirm its alleged discriminatory practices. Unlike the plaintiff in *Havens Realty*, Plaintiff CCJA has not alleged any facts showing that it devoted "significant resources to identify and counteract" Defendant's racial steering practices. *Havens Realty*, 455 U.S. at 379. Without this factual matter showing some diversion of resources or frustration of mission, Plaintiff CCJA has failed to state a viable claim for relief. *Iqbal*, 556 U.S. at 678.

Plaintiff CCJA argues that it discovered Defendant's alleged discriminatory actions "from its own client pool" and is "duty bound to attempt to remedy the discriminatory conduct." (Pl.'s

Resp. 11.) This argument underscores the fact that CCJA did not perform any investigation into Defendant's alleged discriminatory action, or divert any resources, aside from initiating the instant litigation, to counter the alleged discriminatory practices, and is merely trying to hitch its own claim to that of Plaintiff Austin's. In summary, Plaintiff CCJA has not alleged facts showing any specific injury independent of Plaintiff Austin's.

This Court's analysis in *Center for Community Justice and Advocacy v. RBS Citizens, N.A.*, 776 F. Supp. 2d 460 (E.D. Mich. 2011), is relevant to the instant matter. In that case, the Court found that the same plaintiff in the instant case, CCJA, had failed to allege sufficient facts to confer standing, and held in pertinent part as follows:

> In interpreting *Havens Realty*, the Sixth Circuit has repeatedly held that organizational standing requires some investigation on the part of the organization. In *Housing Opportunities Made Equal, Inc. v. The Cincinnati Enquirer, Inc., A Division of Gannett Co., Inc.*, 943 F.2d 644 (6th Cir. 1991), the Court held:
>
>> HOME alleges that defendant's discriminatory advertising has deterred potential renters from seeking housing at the advertised complexes. *This, in turn, has caused HOME to devote resources to investigate* and negate the impact of these advertisements.
>
> *Id.* at 646 (emphasis added). Likewise, in *Hooker*, 990 F.2d 913, the Court noted and held:
>
>> According to the complaint, "Fair Housing Contact Services *conducted an investigation* and confirmed the facts and circumstances alleged [in the complaint]." *FHCS devoted resources to investigate the defendants' practices* and alleges that it has confirmed that defendants do discriminate on the basis of familial status. Therefore, FHCS has standing.

9

> *Id.* at 915 (emphasis added). Again, in *Fair Housing Council, Inc., et al. v. Village of Olde St. Andrews, Inc., et al.*, 210 Fed. Appx. 469 (6th Cir. 2006), the Sixth Circuit revisited the *Hooker* case, stating that "the *Hooker* Court made clear that an organization suffers a concrete injury sufficient to confer standing when it devotes resources to training and deploying testers to investigate suspected instances of discrimination." *Id.* at 477.
>
> In the instant case, Plaintiff has not alleged that it employed testers or that it performed any investigation whatsoever of Defendants' loan activities. . . .
>
> . . . . Plaintiff has also failed to allege that, if any investigation did occur, it occurred prior to the instant case. *Fair Housing Council*, 210 Fed. Appx. at 475 (holding that a plaintiff must "show some injury that is independent of the costs of litigation . . ."). *See also Hughes v. Peshina*, 96 Fed. Appx. 272 (6th Cir. 2004) (holding that plaintiff had standing where it "devoted its efforts to investigating whether [defendants] had violated the law . . ."); *Memphis Ctr. for Indep. Living v. Woodglen Village Apartments P'ship*, No. 08-2121, 2010 WL 145351, *4 (W.D. Tenn. Jan. 8, 2010) (holding that "Plaintiff has failed to allege that any of its resources were diverted *to investigate or counteract* Defendants' alleged actions prior to litigation and independent from this litigation) (emphasis added).

*Id.* at 467-68.

In *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 606 F. Supp. 2d 698, 707 (N.D. Ohio 2009), the United States District Court for the Northern District of Ohio, in finding standing, noted the plaintiff's allegation that CHRP had helped improve specific neighborhood areas, that those areas "had been showing measurable improvement in renovating and marketing their housing stock, in providing safe streets and in improving their schools and infrastructure." In *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554 (6th Cir. 2010), the Sixth Circuit found "no error in the district court's holding that [Cleveland Housing Renewal Project, Inc. ("CHRP")] has standing to prosecute this action in

10

federal court." *Id.* at 561.

The factual allegation in *Cleveland Housing* contains more substance in activity than Plaintiff CCJA has provided in the instant case. Plaintiff CCJA has alleged, in conclusory fashion, that its mission has been frustrated, but unlike the plaintiff in *Cleveland Housing*, CCJA has not alleged specific facts supporting its allegation.

Further, as noted *infra*, CCJA's consultation with Plaintiff Austin did not begin until after the foreclosure had occurred.

### IV. CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendant's Motion and **DISMISS** Plaintiff CCJA for lack of standing..

Plaintiff Austin's claims against Defendant remain in this case.

**SO ORDERED.**

PAUL D. BORMAN
UNITED STATES DISTRICT COURT JUDGE

Dated: 8/30/12
Detroit, Michigan

11